GARY M. RESTAINO
United States Attorney
District of Arizona

DIMITRA H. SAMPSON
Arizona State Bar No. 019133
JILLIAN BESANCON
California State Bar No. 285869
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: Dimitra.Sampson@usdoj.gov
Email: Jillian.Besancon@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> vs. <br><br> Samuel Rappylee Bateman, <br><br> Defendant. | No. CR-22-08092-001-PCT-DGC <br><br> **UNITED STATES' RESPONSE TO MOTION TO PRECLUDE PRETRIAL PUNISHMENT** |

Defendant Bateman is charged with seven felonies, all of which he committed using detention facility telephone and video systems. During the 77 days Bateman spent in federal pre-trial detention before his communications were restricted, he participated in the kidnapping or escape of eight children; had explicit sexual conversations with children; violated a Coconino County Superior Court no-contact order; directed others to intimidate a government witness; sought to influence potential testimony; and repeatedly misused detention facility communications systems in violation of policy.

The United States has accordingly restricted Bateman's communications access for the legitimate purposes of protecting children, preventing criminal conduct, and safeguarding an ongoing investigation. Bateman's motion to reinstate non-legal communications access should be denied.

## I. FACTUAL BACKGROUND

Bateman is a self-proclaimed Prophet of the Fundamentalist Church of Jesus Christ of Latter-Day Saints (FLDS), a subset of the fundamentalist Mormon denominations whose members practice polygamy. He has approximately 50 followers and over 20 wives, nine of whom are minors currently between the ages of 12 and 16. Bateman allegedly has "impressions of Heavenly Father's will" to encourage his followers, including the minor children, to engage in sexual acts and relies on that submission to do his own will. Bateman is a subject in a federal investigation into the transportation of minors in interstate commerce to engage in criminal sexual activity, and travel in interstate commerce to engage in illicit sexual conduct with minors, beginning around May 2020.

**A. Bateman used Coconino County Jail's telephone system to obstruct justice.**

On August 28, 2022, Bateman was arrested by Arizona Department of Public Safety for child endangerment. Bateman was pulled over because he was towing a box trailer with at least three minor females riding unsecured in the trailer. Bateman was temporarily detained, and on August 28 made phone calls from the Coconino County Jail directing his followers to "delete my Signal account now, the whole thing, delete every message, right now." (Discovery 1, -08-28-22_1826.mp3 at 0:45-1:15.)

On September 1, 2022, a Coconino County grand jury returned an indictment charging Bateman with three counts of child abuse arising from the August 28 traffic stop. (Exhibit 1, Filed Under Seal.) On October 7, 2022, the Coconino County Superior Court entered an order prohibiting Bateman from "any contact whatsoever" with any of the named child victims. (Exhibit 2 at 2, Filed Under Seal.)

On September 6, 2022, a federal grand jury returned an indictment charging Bateman with Counts 1-3 in the present case, all of which relate to his phone calls from the Coconino County jail directing others to delete Signal data to obstruct a federal investigation and foreseeable criminal proceeding. (Doc. 3.) Bateman was arrested and detained on September 13, 2022.

### B. Bateman used CAFCC's communications systems to kidnap children and obstruct justice.

After Bateman's federal arrest, nine minor girls, all believed to be wives of Bateman, were taken into Arizona Department of Child Services (DCS) custody on September 14, 2022. Bateman—using communications systems at the Core Civic/Central Arizona Florence Correctional Complex (CAFCC)—then conspired with others to remove the girls from DCS custody. And on November 27, at least three of Bateman's adult wives succeeded in removing eight of the nine children from their DCS placements. Law enforcement found the girls in Spokane, Washington, on December 1, 2022.

On December 14, 2022, the federal grand jury returned a superseding indictment charging Bateman and three of his wives with Counts 4-7, including tampering with an official proceeding; conspiracy to tamper with an official proceeding; kidnapping; and conspiracy to kidnap. (Doc. 23.)  The kidnapping charges pertain to Jane Doe 4 (currently 13 years old), Jane Doe 8 (currently 12 years old), and Jane Doe 9 (currently 13 years old).

As set forth in the Superseding Indictment, Bateman used the recorded and monitored CAFCC video call system to participate in the kidnapping. (Doc. 23.)  For example, on the morning of November 28, 2022, Bateman made a video call from CAFCC to co-defendant Bistline, who appeared to be in a hotel room. Bistline told Bateman that one of the girls was not with them, and Bateman told them they needed to get her. The video panned to all eight minors taken from DCS custody.[1]  (Discovery 111, -13713982.mp4.)

### C. Bateman used CAFCC's communications systems to engage in sexual discussions with children, in violation of a court order.

Despite Bateman's knowledge that his non-legal communications are monitored, he brazenly engaged in explicit sexual conversations with children, including with 13-year-

---

[1] Counsel and investigators for the United States have not reviewed all of Bateman's jail communications and the communications discussed herein are non-exhaustive.

- 3 -

old Jane Doe 4. On November 26, 2022, Bateman spoke to Jane Doe 4, then in DCS custody, who was on another phone line during a video call with some of Bateman's adult wives. Bateman referred to Jane Doe 4 as his "sexy darling" and made statements including, "Is this [Jane Doe 4] Rappylee Bateman? . . . . I just want to rip off your bra and suck on your titties and fuck you" and, "You have such beautiful titties. I just want to fondle them . . . . Don't you remember all those sacred times we spent together?" (Discovery 110, -13764022.mp4 at 10:10-14:02.)  On the same day, Bateman spoke to 16-year-old Jane Doe 11, then in DCS custody, saying "I love you . . . [Jane Doe 11] Rappylee Bateman" and "I just want to suck on your beautiful titties and fuck you."  (Discovery 110, -13764062.mp4 at 0:10-0:35.)  And the next day, on November 27, 2022, Bateman made similar statements to 16-year old "[Jane Doe 10] Rappylee Bateman." (Discovery 111, -13714402.mp4 at 1:00-1:30.)

At the time of these calls, Bateman was prohibited from all contact with Jane Doe 4, who is a victim in the Coconino County child abuse case and covered by the Superior Court's no-contact Order. (Exhibit 2.)

**D. Bateman used CAFCC's communications systems to direct witness intimidation and influence potential testimony.**

On the same day Bateman made sexual comments to Jane Doe 4 and Jane Doe 11, he also directed some of his wives to send intimidating messages to government witness CM, who is not a FLDS member or follower of Bateman but had previously gained Bateman's trust as someone who tried to help the members of their community. Using the CAFCC video call system, Bateman asked one of his wives to send CM a verse of scripture from Doctrine and Covenants Section 121, which states in part: "Wo unto all those that discomfort my people, and drive, and murder, and testify against them, saith the Lord of Hosts; a generation of vipers shall not escape the damnation of hell."  Bateman instructed the woman to use a blocked phone number to "tell [CM] that I gave you the message to send this to her and tell her that she picked the wrong religion to hate. K? . . . . You should

- 4 -

also tell her that I can guarantee that her and Little Froggy have cancer already forming in their bodies." (Discovery 110, -13762332.mp4 at 4:55-6:20.)

Bateman's video calls further show attempts to influence the testimony of his followers, including statements like, "They are going to try breaking our testimony and we will not give in." (Discovery 110, -13764012.mp4.)

**E.  Bateman violated CAFCC communications policies.**

The United States is also aware that Bateman disregarded CAFCC communications rules by having video communications with individuals, who then brought third parties into the calls using separate electronic devices. Bateman was admonished for this conduct and had privileges removed by CAFCC, but he continued to participate in three-way calling.

**F.  Bateman's CAFCC communications were suspended.**

On November 29, 2023—two days after Bateman's child wives were taken from DCS custody and while they were still missing—Government counsel requested that CAFCC suspend Bateman's communication privileges, except for communications with his counsel. Bateman's counsel was notified of the request the same day. CAFCC honored the request and Bateman's communications remain restricted.

Even after the restrictions were imposed, Bateman continued to violate the rules and attempted to find ways to circumvent those restrictions. On at least one occasion on November 30, 2022, Bateman used the identifying PIN number of another detainee to attempt to make a call. Bateman continues to try to call blocked phone numbers nearly every day.

While Bateman's adult wives are aware of the communication restrictions, they too continue to try to circumvent the rules by changing email addresses and phone numbers to frustrate CAFCC's efforts. Most recently, on March 3, 2023—the date of this filing—a new email address in the name of "Elaine Bateman" (a known code name for one of Bateman's adult wives) was created and Bateman received approximately 33 messages before the new email address was blocked.

## II. LEGAL STANDARD

When a pre-trial detainee challenges an aspect of his pretrial detention that is not alleged to violate any express guarantee of the Constitution, at issue is the detainee's right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534 (1979). Such challenges arise under the Fourteenth Amendment Due Process Clause. *Id*. at 535. The Due Process Clause protects pretrial detainees from punishment. *Id*. at 537; *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) (pretrial detainees have a substantive due process right against restrictions that amount to punishment). This substantive due process right is violated if restrictions are "imposed for the purpose of punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing *Bell*, 441 U.S. at 535). There is no constitutional infringement, however, if the restrictions are "but an incident of some other legitimate government purpose." *Id.* (citing *Bell*, 441 U.S. at 535). In that case, "governmental restrictions are permissible." *Id.*

In distinguishing between a permissible restriction and impermissible punishment, the first determination is "whether the restriction is based upon an express intent to inflict punishment." *Valdez*, 302 F.3d at 1045. Absent an express intent to inflict punishment, the court turns to "whether punitive intent can be inferred from the nature of the restriction." *Id*. Moreover, courts afford significant deference to prison officials' discretion to manage their prisons. *See Bell*, 441 U.S. at 548; *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988). As the Ninth Circuit has stated, prison and jail officials should be accorded "wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (quoting *Bell*, 441 U.S. at 540).

Relatedly, a prison regulation that impinges on an inmate's alleged constitutional right "is valid if it is reasonably related to legitimate penological interests." *Valdez*, 302 F.3d at 1048 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). *See also Bell*, 441 U.S. at 533 ("[E]ven when an institutional restriction infringes a specific constitutional guarantee,

the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."). Courts consider the following in making that reasonableness determination:

> (1) whether there is a valid, rational connection between the restriction and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right; (3) whether accommodating the asserted constitutional right will have a significant negative impact on prison guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are obvious, easy alternatives to the restriction showing that it is an exaggerated response to prison concerns.

*Valdez*, 302 F.3d at 1049. An inmate "has no First Amendment right of access to a telephone." *Hayat v. Garber*, No. CV 13-1381-PHX-DGC, 2013 WL 5913790, at *2 (D. Ariz. Nov. 1, 2013). References in Ninth Circuit cases to right of access to a telephone "were *dicta,* and no opinion has identified the source of such a right." *Id*. The Ninth Circuit does identify a First Amendment right to "communicate with persons outside prison walls. Use of a telephone provides a *means* of exercising this right." *Id*. (*citing Valdez*, 302 F.3d at 1048) (emphasis in original).

### III.   ARGUMENT

The United States acted in compliance with the Constitution when it suspended Bateman's communications privileges for legitimate governmental purposes, and those purposes remain valid today. Bateman cannot show a due process violation nor a First Amendment violation and his motion should be denied.

**A. Bateman's communication restrictions do not violate due process because they were not imposed for the purpose of punishment.**

The United States suspended Bateman's communication privileges because he used communications systems in numerous illegal and improper ways, not to illegally punish him. There is no government intent—whether express or implied—to inflict punishment upon Bateman. He had the same communications access as every other pretrial detainee

for more than two months, until it became apparent he had violated CAFCC policy by three-way calling, violated the Coconino County no-contact order, sought to influence victims and/or witnesses, and played a significant role in the removal and kidnapping of minors from DCS custody. Only after Bateman conspired in the kidnapping of three young girls did the United States take action to suspend his communications out of concern Bateman would continue to endanger minor victims and interfere with legitimate investigative efforts.

This restriction is related to legitimate, ongoing governmental purposes including protecting children, preventing new criminal conduct, and maintaining the integrity of the ongoing sex trafficking investigation. *Haraszewski v. Brannan*, No. 10CV0546-LAB PCL, 2013 WL 4516776, at *9 (S.D. Cal. Aug. 21, 2013) ("Protecting people inside or outside the detention facility qualifies as a security concern, and not punishment, and this is an appropriate motive for state officials both inside and outside a jail."); *United States v. Vega-Soto*, No. 06CR1242 DMS, 2007 WL 9655860, at *3 (S.D. Cal. Apr. 4, 2007) (ruling that a social communication restriction furthered facility's "efforts to prevent defendants from using the phone to facilitate illegal activities"). The United States has an interest in the safety and wellbeing of the minors in DCS custody, all of whom are potential or likely victims or witnesses, and some of whom are named victims in the Coconino County or federal indictments. Further, Bateman has already directed others to delete likely evidence, in particular Signal messaging data, and asked one of his followers to send an intimidating message to CM.

The communications suspension is reasonably related to these high-priority interests and is not an exaggerated response. When Bateman had communications access, he committed obstruction of justice, made sexual statements to his child wives, participated in the escape and kidnap of minors, and sought to influence potential victims and witnesses not to cooperate with the federal investigation. Suspension of Bateman's communication was—and continues to be—a rational, proportional response to prevent Bateman from

endangering minors, committing new crimes, and continuing to tamper with evidence and witnesses. *Lewis v. King Cnty. Jail*, No. C15-1633-JLR-JPD, 2016 WL 8193689, at *3 (W.D. Wash. Oct. 24, 2016), *report and recommendation adopted*, No. C15-1633-JLR, 2017 WL 464440 (W.D. Wash. Feb. 2, 2017) (finding no due process violation where pretrial detainee was placed on "phone deadlock" after using "jail phone system to repeatedly violate a no-contact order and to tamper with a victim/material witness in his pending criminal cases"). And a total prohibition on non-legal communications is justified because Bateman could engage in improper communication in-person or through mail, electronic messaging, telephone, video, or other means.

Because Bateman's communications have been suspended for legitimate reasons, his due process rights have not been violated.

**B. Bateman's communication restrictions do not violate the First Amendment because they are reasonably related to legitimate penological interests.**

Bateman has also not shown a First Amendment entitlement to jail communications. The Ninth Circuit has recognized that detainees have some First Amendment right to communicate with people outside detention facilities, but the right is not absolute. *Valdez*, 302 F.3d at 1048.

Here, there is no constitutional violation because the communications restriction is reasonably related to legitimate governmental interests for the reasons stated in Section III.A., *supra*. Further, Bateman can still exercise his First Amendment rights by communicating with his legal team in any way and with whatever frequency he wishes.

And, as in *Valdez*, allowing Bateman communications access would require CAFCC "to allocate additional resources to monitor his [communications]" to mitigate the valid concerns raised by his conduct. 302 F.3d at 1049. Bateman communicated through video and phone calls, during in-person visits, and using electronic messaging. It would be unduly burdensome for the Government to monitor any or all these means of communications in real time, particularly because his communications are extensive.

Bateman suggests his communications could be reviewed after he makes them, but he was not deterred from illegal and inappropriate behavior despite knowing his communications are monitored and succeeded in committing crimes despite such monitoring.

Finally, there are no obvious, easy alternatives to the communication suspension. Bateman has suggested he be permitted to communicate with three of his wives, but this is unlikely to provide a meaningful limitation on his communications. In past telephonic and video communications, Bateman commonly called one phone number to speak with multiple people (including children) who were either together in one location or who participated on a third device in contravention of CAFCC policy. As a practical matter, it will be very difficult for the CAFCC staff to ensure Bateman is communicating with only certain individuals if the Court were to allow his communications to resume.

For all these reasons, the United States' limitation on Bateman's First Amendment rights is reasonable and constitutionally valid.[2]

---

[2] As an attempted compromise, the United States offered to allow Bateman access to communicate with his three biological sons, who are not believed to be participants in the sex trafficking of children. While Bateman would like contact with his sons, he also seeks contact with his wives. The United States has ongoing concerns that some of Bateman's wives have been involved in sex crimes and/or are interfering with DCS custody of the minors.

## IV. CONCLUSION

Bateman abused communications systems in the Coconino County Jail and CAFCC to commit crimes, engage in sexual communications with children, violate a court order, seek to influence potential victims or witnesses, and evade CAFCC communications policies. The United States has complied with the Constitution in restricting his communications, and his motion to reinstate his communications privileges should be denied.

Respectfully submitted this 3rd day of March, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

 *s/ Jillian Besancon*
DIMITRA H. SAMPSON
JILLIAN BESANCON
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant: Marc Victor, Jose Saldivar, Sandra Hamilton, and Steve Wallin, *Attorneys for Defendants Bateman, Bistline, Barlow, and Johnson*

 *s/ Jillian Besancon*
U.S. Attorney's Office