GARY M. RESTAINO
United States Attorney
District of Arizona

DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Email: dimitra.sampson@usdoj.gov
JILLIAN BESANCON
California State Bar No. 285869
Email: jillian.besancon@usdoj.gov
LINDSAY L. SHORT
Arizona State Bar No. 034125
Email: lindsay.short@usdoj.gov
RYAN POWELL
Arizona State Bar No. 025695
Email: ryan.powell@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. CR-22-08092-001-PCT-SMB |
| Plaintiff, | |
| v. | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER FOR UNMONITORED MEETINGS, CORRESPONDENCE AND PHONE CALLS (DOC. 238)** |
| Samuel Rappylee Bateman, | |
| Defendant. | |

In his "Motion for Protective Order for Unmonitored Meetings, Correspondence and Phone Calls" (Doc. 238), *pro se* Defendant Samuel Rappylee Bateman requests the reinstatement of various communication privileges at his detention facility (or, in some instances, the implementation of new privileges). The United States agrees, to a limited extent, that restoration of certain communication privileges is appropriate given his pro se status and need to prepare for trial. Specifically, the government does not oppose restoration of Bateman's phone and video call privileges, with strict time limits, as well as

his use of mail and tablet messaging—all subject to monitoring conditions previously noticed by the government. (Doc. 229.) Other requests, however, including in-person visits and the ability to communicate with incarcerated co-defendants, should be denied.

## I.    Relevant Background

The United States previously filed a notice regarding pro se defendants' jail communications, which contains the relevant background. (Doc. 229.) That notice, and the pleadings it references, are incorporated fully by reference and only summarized here.[1]

In short, while in custody Bateman has used jail communications to obstruct justice, kidnap children, and tamper with witnesses at every opportunity. While temporarily detained on child endangerment charges in the Coconino County Jail beginning on August 28, 2022, for example, Bateman directed his followers to "delete my Signal account now, the whole thing, delete every message, right now." Then, following his federal arrest, he conspired with others using the communications system at the CoreCivic/Central Arizona Florence Correctional Complex (CAFCC) to remove eight of nine minor girls, all believed to be his child "wives," from their placement with Arizona Department of Child Services (DCS) custody. Bateman also engaged in explicit sexual conversations with child victims from CAFCC, and has used CAFCC's jail communications systems to direct witness intimidation and influence potential testimony.

As a result, Bateman's CAFCC communications privileges were restricted on November 29, 2022. He then immediately attempted to circumvent those restrictions. On the very next day, he used a PIN number of another detainee to attempt to make a call. In the following weeks, his efforts continued, including the use of new email addresses created by his "wives" to avoid the "blocked" list.

Bateman then filed a motion alleging that CAFCC's restrictions violated his due process and First Amendment rights. (Doc. 55.) The parties ultimately reached a stipulation

---

[1] Another defendant, Josephine Barlow Bistline, is currently proceeding *pro se*. This response addresses Bateman's motion; the government will address Bistline's jail communications if and when raised.

which permitted, among other provisions, Bateman to have "phone calls with his sons," video visits for one hour three times a week with one of six named women at a time, and to communicate via letter with "anyone except the alleged victims" and three of his co-defendants. (Doc. 68.) Bateman then violated the stipulation within days, including by directing others to obstruct justice. His communications privileges were restricted again on March 24, 2023.

The Court permitted Bateman to represent himself on June 13, 2023. After Bateman claimed at the hearing that he had "been in lockdown since November 29th of last year," the Court affirmed that if Bateman wanted to "reanimate" the discussion of his communications restrictions, "he should file a motion now that he represents himself laying out exactly what his requests are[.]" (RT 6/13/23.)

The United States filed its notice outlining its anticipated protocol regarding pro se defendants' jail communications on July 19, 2023. (Doc. 229.) Bateman filed the pending motion on July 21, 2023.[2] (Doc. 238.)

**II.   Law**

A defendant in a criminal case has the right to waive assistance of counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 833 (1975). That right entails the ability to represent oneself meaningfully. *United States v. Farias*, 618 F.3d 1049, 1053 (9th Cir. 2010). The requirements for meaningful representation may range from reasonable access to "law books, witnesses, or other tools to prepare a defense" to simply having the time to prepare. *Id.*; *United States v. Sarno*, 73 F.3d 1470, 1491 (1995). However, pro se defendants are not entitled to resources "over and above" what is provided to the general inmate population. *United States v. Beale*, 574 F.3d 512, 520 (8th Cir. 2009). The right to access the tools to prepare a defense as a self-represented litigant "is not unlimited" and must be "balanced against the legitimate security needs or resource constraints of the prison." *Sarno*, 73 F.3d at 1491.

---

[2] The motion was not served on the United States until July 24, 2023.

3

A jail's monitoring of the communications of pretrial detainees is constitutional. *See United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996) ("We hold that any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls."); *United States v. Mitan*, Nos. 08-760-1, 08-760-2, 2009 WL 3081727, at *4 (E.D. Pa. Sept. 25, 2009) ("there is no issue here as to the propriety of the [detention center's] monitoring [a pro se pretrial detainee's] telephone calls"). Monitoring communications between a non-lawyer pro se pretrial detainee and other non-lawyers likewise does not violate the Fifth or Sixth Amendments, or attorney-client privilege. *See United States v. Scott*, 521 F.2d 1188, 1191 (9th Cir. 1975) (holding no Fifth or Sixth Amendment violations when undercover agent was present for strategy discussions amongst pro se defendant's non-lawyer team, because defendant "had waived or renounced his right to counsel and prepared for trial and tried the case without an attorney[,]" apparently "enlist[ing] the assistance of a group of fellow tax resisters to help him in his own defense."). And even if there were constitutional concerns with such monitoring, "institutional security concerns justify such recordings" and render them reasonable. *Van Poyck*, 77 F.3d at 291.

Relatedly, restricting communications access for a pretrial detainee is constitutional when reasonably related to a legitimate government interest. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of…pretrial detainees"); *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior.").[3] An institution may not impose such restrictions "with the express intent to punish," but it may do so for legitimate correctional reasons—for example, preventing a defendant from violating a no-

---

[3] Although *Overton* apparently concerned convicted inmates, the Ninth Circuit evaluates communications curtailments for pretrial detainees under the same standard. *Van Poyck*, 77 F.3d at 291 n.10.

4

contact order, witness tampering, or committing further crimes from within an institution. *See Lewis v. King County Jail*, No. C15-1633-JLR-JPD, 2016 WL 8193689, at *4 (W.D. Wash. Oct. 24, 2016).

This is true when a pretrial detainee is representing himself. *Id.* (holding pretrial telephone "deadlock" did not violate pro se defendant's constitutional rights where he had engaged in witness tampering and violated no-contact order). Where a pro se pretrial detainee has abused communications privileges, various courts have upheld restrictions on those privileges so long as a work-around—such as standby counsel to facilitate discovery review or to be present for witness preparation calls—ensures the right to meaningful self-representation. *See, e.g.*, *id.*; *Love v. McDonnell*, No. CV-17-5356 ODW (AS), 2017 WL 7049526, at *12 (C.D. Cal. Dec. 12, 2017) (upholding, under AEDPA review, California Court of Appeal decision that trial court did not abuse its discretion by restricting pro se defendant's communication privileges where defendant had misused those privileges to commit witness tampering). *See also United States v. Janis*, 820 F. Supp. 512, 517-18 (S.D. Cal. 1992) (declining to decide whether pro se defendant who had *not* abused communications privileges had right to unmonitored calls to investigators and witnesses because he had unmonitored access to standby counsel and court-appointed investigator).

Criminal defendants have a right to represent themselves and to access the tools to make such representation meaningful. However, they do not have a right to special privileges beyond those available to any other pretrial detainee; all communications with non-lawyers may be monitored; and where they have abused access to jail communications, their privileges may be curtailed so long as they nevertheless have a means to effectuate that meaningful self-representation.

**III. Argument**

Much of the motion, which appears to have been prepared for another case and modified by Bateman, is irrelevant and inapplicable here. For example, the motion references a "302 report regarding another defendant in this case," which was not attached and is not believed to exist in this case. (Doc. 238 at 4.) Fundamentally, though, Bateman's

5

motion requests instatement of communications privileges in the form of telephone calls free from surveillance (or, alternatively, that they not be provided to law enforcement); the designation of "any individual" as a "professional" for purposes of making incoming calls; and in-person, unmonitored visits with "any advisor, expert, or potential witness." (Doc. 238 at 9.) The United States addresses these and Bateman's other requests in turn.

### A.     In-Person Visits

Bateman requests "in-person, unmonitored, unrecorded visits with any advisor, expert or potential expert witness so that he can prepare to represent himself at trial." (Doc. 238 at 9.) This request should be denied. Neither Bateman nor any other defendant is permitted privileged communications with a non-lawyer, as the Court has already explained to Bateman:

> THE COURT: Okay. Mr. Bateman, yes, what the government said is correct. If you have attempted to request protected conferences with anyone other than your attorney, that won't be allowed. Do you understand that?
>
> THE DEFENDANT: I -- I didn't. I don't -- I don't know why.
>
> THE COURT: Because they're not your lawyer and they can't represent you. So you now are representing yourself, so you will be allowed to file things, but you can't have nonlawyers file something on your behalf or meet with you to consult with you at CoreCivic in the same way as you would with an attorney. Okay?
>
> THE DEFENDANT: Got it. Yes.

(RT 6/13/23.)

In-person, *non-privileged* visits with anyone other than advisory counsel should also not be permitted. The government's understanding is that CAFCC is not presently monitoring or recording in-person visits. And as Bateman himself acknowledges, "the legitimate penological interest served by monitoring and recording a pretrial detainee's calls and visits is facility security: the need to ensure that detainees do not use the phones and visits to … commit crime within the institution." (Doc. 238 at 6.) *See also Schwerdtfeger v. Lamarque*, No. C 02-5672 SI (PR), 2003 WL 22384765, at *7 (N.D. Cal.

Oct. 8, 2003) ("We are mindful that this right is not unlimited. Security considerations and avoidance of abuse by opportunistic or vacillating defendants may require special adjustments.") (quoting *Milton*, 767 F.2d at 1446).

Bateman has repeatedly committed crimes from custody. He has used every opportunity to violate the restrictions placed upon him. A restriction on unrecorded, unmonitored in-person visits is an entirely reasonable limitation given this defendant's repeated history of committing crimes using communication privileges—and even while knowing that those forms of communication were being monitored. *Overton* 539 U.S. at 134 ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior.").

The government objects to permitting Bateman in-person visits with anyone other than his advisory counsel at this time.

### B. Other Means of Communication

Although the motion does not clearly state as much, the government interprets Bateman's motion as seeking reinstatement of other forms of communication at CAFCC. Notwithstanding Bateman's history, the government has recognized that "pro se defendants may engage in strategy discussions with witnesses, investigators, and experts[.]" (Doc. 229 at 13.) To that end, the government believes that it may be appropriate to permit Bateman limited communication privileges, in addition to those with his advisory counsel, to prepare for trial. (Bateman's ability to communicate with his advisory counsel remains, of course, unlimited and unmonitored.)

The government proposes that Bateman's mail and tablet privileges be reinstated, subject to review by detention facility staff and non-trial team AUSAs and investigators. The government also believes it appropriate, at this time, that Bateman be permitted limited phone and video visits to prepare for trial. The government proposes that Bateman be permitted up to a total of one hour per day, Monday through Friday, allocated between phone and video visits as reasonable and subject to accommodation by detention facility staff.

To the extent that the Court does permit Bateman any communications privileges at CAFCC, the government intends to comply with the protocol outlined in its prior notice regarding pro se defendants' jail communications. (Doc. 229 at 12–13.) Communications with non-lawyers are not privileged. *See United States v. Scott*, 521 F.2d 1188, 1191 (9th Cir. 1975). Accordingly, while not required by law, and as described more fully in its notice, the government intends to have AUSAs and investigators who are *not* on the trial team review those communications. If that review team determines that material should be disclosed to the trial team, they will apply to the Court for permission to disclose those communications.

### *1.     Requirement for Clear Identification of Communicators*

Bateman and his followers are also known to use code names for his adult and minor "wives", code words, and terms referencing specific groups of people. (*See* Doc. 58 at 6.) The government also requests, to the extent that the Court is inclined to reinstate any of Bateman's communication privileges, that any person with whom Bateman communicates is clearly and individually identified, without the use of code names, code words, or general group identifiers. The prior stipulation between Bateman and the government regarding his jail communications contained a similar provision (before Bateman promptly violated it). (Doc. 68 at 2.) Absent clear and individual identification, any such communications will not be considered subject to the review protocol identified in the government's prior notice. (Doc. 229.)

### *2.     Prohibition on Direct Contact with Victims*

Further, should the Court reinstate any communication privileges, the government also requests that Bateman not be permitted to directly communicate with any of the alleged victims without prior notification to the assigned prosecutors in this case. The Ninth Circuit Court of Appeals has recognized "that a court has the inherent power to protect witnesses." *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981). While acknowledging that Bateman needs to prepare for trial as a pro se defendant, nonetheless, his pro se status changes nothing about the fact that his victims are minors in the legal

custody of the Arizona Department of Child Safety (AZ DCS). The victims have no obligation to speak with Bateman under the Crime Victims' Rights Act. *See* 18 U.S.C. § 3771(a)(1) (identifying the "right to be reasonably protected from the accused"). Their legal guardians may also lawfully invoke their rights on their behalf.

Such a no-contact order requires the government to show "that the activity restrained poses a clear and present danger or a serious and imminent threat to a protected competing interest; the restraint must be narrowly drawn and no reasonable alternatives, having a lesser impact on First Amendment freedoms, must be available." *Wheeler*, 640 F.2d at 1124 (quoting *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978) (internal citations omitted)); *see also United States v. Sims*, No. 221CR00026GMNBNW, 2021 WL 1062548, at *4–5 (D. Nev. Mar. 18, 2021). Both tests are clearly met.

First, permitting Bateman to directly contact his child victims would pose both a clear and present danger and a serious or imminent threat to the victims. This is evidenced by not only the allegations underlying the second superseding indictment, but also the fact that while in custody, Bateman used CAFCC facilities to communicate with child victims in this case—telling Jane Doe 4, a 13-year-old in DCS custody, for example, "I just want to rip off your bra and suck on your titties and fuck you" and calling her a "sexy darling." (Doc. 229 at 4.) As described in the second superseding indictment and other filings in this case, Bateman also conspired with others to remove the girls from their AZ DCS placements, culminating in the abduction of eight of the nine girls on November 27, 2022. (Doc. 104, ¶¶ 289–315; Doc 229 at 3.) He is charged with both obstruction charges (Counts 47-48) and kidnapping charges (Counts 49-50) arising from the related communications—all committed while he was in custody. Bateman is also charged with witness tampering arising from the use of jail communications to both directly and indirectly instruct nine of his minor victims not to speak with anyone about the pending federal investigation and prosecution. (Count 53.) His repeated history makes clear that to permit Bateman direct contact would pose both a clear and present danger and a serious or imminent threat to his victims.

9

Second, the government's request is also narrowly drawn and no reasonable alternatives, having a lesser impact on First Amendment freedoms, are available. *Wheeler*, 640 F.2d at 1124. The government proposes that should Bateman intend to communicate with any of his minor victims to prepare for trial, he must notify the government, which would then communicate with DCS as the girls' guardians. (The same would be true should Bateman be represented in the normal course.) Should, theoretically, those interviews be consented to, the government attorneys may elect to be present for them—again, as in the normal course, should Bateman be represented by counsel. But given his extensive history of abuse and explicit communications with his victims, the government requests that Bateman not be permitted to either directly or, with the assistance of others, contact his minor victims from custody and without prior notification to the government (and, by extension, their AZ DCS guardians).

### C.  CAFCC's Disclosure to United States

Bateman also requests that the Court prohibit CAFCC from disclosing of names or dates of his visits, calls, or correspondence to the government. This request should be denied. As indicated, there is no constitutional prohibition against monitoring the communications of pretrial detainees, including pro se defendants. *See Van Poyck*, 77 F.3d at 291; *Lewis*, 2016 WL 8193689, at *4. And to the extent that Bateman is concerned that members of the trial team will be reviewing his communications, as indicated, the government intends follow the protocol outlined in its notice moving forward. (Doc. 229 at 12–13.) As a result, any pro se defendant's, including Bateman's, recorded communications will be segregated from the trial team and disclosed to the trial AUSAs only with the Court's approval.

### D.  Disclosure of Communications

Bateman also requests that the Court order that the United States "identify and disclose to him any and all recordings, reports and records already collected about his communications." (Doc. 238 at 9.) This is not necessary. Many of Bateman's jail calls and messages from the Coconino County Jail, as well as his CAFCC calls and video calls, tablet

messages, visitation logs, and mail and correspondence, have already been provided to Bateman in discovery. Any remaining communications will be provided on a rolling basis in compliance with the Scheduling Order in this case.

### E. Joint Defense Agreement

Bateman requests that he be permitted to communicate with co-defendants housed in the same facility—specifically Donnae Barlow, Naomi Bistline, Josephine Barlow Bistline, and Moretta Rose Johnson—because they "wish to participate in a Joint Defense Agreement." (Doc. 238 at 2.) This request should be denied. Neither Bateman nor any other defendants have adequately alleged the existence of a joint defense agreement. And even if they had, it is not clear that such an agreement would cover communications between defendants without the presence of counsel.

A joint defense privilege is "an extension of the attorney-client privilege." *United States v. Henke,* 222 F.3d 633, 637 (9th Cir. 2000). While the attorney-client privilege will ordinarily be deemed waived when a client discloses the contents of an otherwise privileged communication to a third party, the joint defense privilege was adopted as an exception. Pursuant to a joint defense agreement, "communications between a client and his own lawyer remain protected by the attorney-client privilege when disclosed to co-defendants or their counsel for purposes of a common defense." *United States v. Stepney*, 246 F. Supp. 2d 1069, 1075 (N.D. Cal. 2003).

The existence of, terms of, or participants in, a joint defense agreement are not privileged. *Id.* 246 F. Supp. 2d at 1078 (citing *United States v. Bauer*, 132 F.3d 504, 508-09 (9th Cir. 1997)). And recognizing the potential conflicts of interest arising from such agreements, courts have "routinely intervened—prior to any controversy arising—where the circumstances of a criminal defendant's representation raises the potential for conflict of interest during the course of the proceedings, even before the intervention is required by statutory or constitutional rule." *Stepney*, 246 F. Supp. 2d at 1077. To analyze a proposed joint defense agreement, "the court must first examine in detail the nature of the joint defense privilege." *Id*. at 1073.

Rather than a bare assertion that the parties "wish" to enter into a joint defense agreement, the proper procedure would be for the Court to examine, ex parte, the terms of any proposed agreement before permitting such communication. To the extent that Bateman is unable to form a joint defense agreement himself, given his present inability to communicate with co-defendants, he should work through his advisory counsel. And should the Court determine that any allegedly privileged materials were covered within the scope of any such agreement, the government would review those communications pursuant to the practices laid out in its notice. (Doc. 229 at 12–13.)

Further, even if such an agreement did exist, it is not clear that it could conceivably apply to communications between Bateman and co-defendants in custody without the presence of attorneys. Courts "have generally held that the joint defense privilege does not cover conversations among defendants made outside counsel's presence." *United States v. Austin*, 416 F.3d 1016, 1019 (9th Cir. 2005). *See also Sapphire Sales Sols., LLC v. Best W. Int'l, Inc.*, No. CV-12-01538-PHX-ROS, 2013 WL 12284534, at \*2 (D. Ariz. June 27, 2013) ("The Ninth Circuit has not yet established whether communications between clients, outside the presence of counsel, are subject to the privilege and other courts reached conflicting conclusions."). The Ninth Circuit has also explicitly declined to decide "whether the joint defense privilege ever protects inmate-to-inmate conversations in the absence of counsel." *Austin*, 416 F.3d at 1025.

For this additional reason, Bateman's communication privileges should not be extended to include unsupervised, in-person visits, including with co-defendants.

**IV.     Conclusion**

For the foregoing reasons, Defendant's "Motion for Protective Order for Unmonitored Meetings, Correspondence and Phone Calls" should be granted to a limited extent. The United States recommends that Bateman be permitted to communicate via mail and tablet and up to one hour, combined, of phone calls and video calls per weekday (all without the use of code names or language, or Bateman's direct contact with victims), subject to reasonable alternate arrangements by the detention facility and to the protocol

12

previously advised in the United States' notice regarding pro se defendants' jail communications. (Doc. 229.) Otherwise, the motion should be denied.

      Respectfully submitted this 7th day of August, 2023.

                  GARY M. RESTAINO
                  United States Attorney
                  District of Arizona

                  *s/ Lindsay L. Short*
                  DIMITRA H. SAMPSON
                  JILLIAN BESANCON
                  LINDSAY L. SHORT
                  RYAN POWELL
                  Assistant U.S. Attorneys

# **CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Eugene Marquez
*Advisory Attorney for Pro Se Defendant (1)*
*Samuel Rappylee Bateman*

I further certify that some of the participants in this case are not registered CM/ECF users. I have mailed the foregoing document by regular First-Class Mail, postage prepaid, for delivery, to the following non-CM/ECF participant:

Samuel Rappylee Bateman
Reg. No. 21338-510
Florence-AZ-Florence-CAFCC
Central Arizona Florence Correctional Complex
P.O. Box 6300
Florence, Az 85132
*Pro Se Defendant (1)*

*s/ Lindsay L. Short*
U.S. Attorney's Office