GARY M. RESTAINO
United States Attorney
District of Arizona

DIMITRA H. SAMPSON
Arizona State Bar No. 019133
Email: dimitra.sampson@usdoj.gov
JILLIAN BESANCON
California State Bar No. 285869
Email: jillian.besancon@usdoj.gov
RYAN POWELL
Arizona State Bar No. 025695
Email: ryan.powell@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Samuel Bateman, et al.,<br><br>　　　　　　Defendants. | No. CR-22-08092-PCT-SMB<br><br>**UNITED STATES' NOTICE OF INTENT TO RELY UPON EXPERT WITNESS TESTIMONY BY FBI CART FORENSIC EXAMINERS**<br><br>– AND –<br><br>**REQUEST FOR DEFENSE NOTICE AND DISCOVERY** |

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and Federal Rules of Evidence 702, 703, and 705, the United States notices its intent to use witness testimony by FBI Computer Analysis Response Team ("CART") forensic examiners during its case-in-chief and/or rebuttal at trial. The United States intends to present testimony by Master Digital Forensic Examiner Anita Shah; Senior Digital Forensic Examiner Joseph P. Shramovich III; Special Agent and Digital Forensic Examiner J. Patrick Cullen; and Special Agent and Digital Forensic Examiner Joshua B. Arndt. Although the expected

testimony may not be "expert" testimony under Rules 702, 703, 704, and 705, the government provides this notice in an abundance of caution.

As set forth below, the forensic examiners are expected to testify about the examinations of, and the extraction of data from, electronic devices collected in this investigation. They are also expected to authenticate certain items found on the electronic devices, which the government may seek to admit as exhibits at trial. The government will disclose a draft list of such items in compliance with the Court's Amended Scheduling Order.

In addition to testimony concerning forensic examinations, the witnesses will offer testimony about how cell phones and the internet work, and how the users of the devices in this case used cellular networks and the internet to communicate. Special Agent Cullen is also expected to testify about: (1) the Signal encrypted messaging service; and (2) how emails are transmitted and how an email message sent by jomiebee@gmail.com was transmitted interstate.

The witnesses' reports (including device extraction reports) and notes have been produced in discovery to defense counsel. Their curricula vitae (CVs) have been provided to defense counsel via email. The witnesses' CVs include their qualifications and lists of cases in which they have testified during the previous four years. None of the witnesses have authored any "publications" within the meaning of Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) within the previous 10 years.

**I.     Expected Testimony and the Bases and Reasons**

    **A. Forensic Examinations and Related General Testimony**

The above-listed forensic examiners will testify based on their examination of the digital evidence in this case and their training, education, experience, and expertise as outlined in their CVs. The witnesses will describe their training and experience in conducting forensic examinations on electronic devices (like computers, tablets, and cell phones) and electronic storage devices (like hard drives, USB thumb drives, and SD cards).

The witnesses will describe their familiarity with the FBI-approved forensic software used in this investigation, such as Cellebrite, Greykey, FTK, and AD Lab. The witnesses will explain that their training to be forensic examiners includes being trained in using FBI-approved forensic software to analyze electronic devices. The witnesses will explain how FBI personnel analyzed the devices in this case and will explain the steps taken to protect the integrity of the data pulled from the devices using approved tools. The witnesses may describe how review or analysis will not occur to the original device after it is imaged with a verified copy of the data, and that only the copy set is used for analysis to maintain the integrity of the original data.

The witnesses will also testify regarding all aspects of the reports that were generated when they extracted data from the devices, which have been provided to the defendants in discovery. For instance, the witnesses may discuss the internet capability of a device; the user accounts found on the device; associated cell phone service providers and cell phone numbers; contacts; applications; and associated files. They will testify about stored and deleted information found on the devices. They will testify that certain items—such as documents, emails, messages, photos, audio files, and videos files—were found on the devices. The witnesses will testify about the dates and times those items were created and/or transmitted and the meaning of the metadata associated with the items. The witnesses may further testify about location data found on the devices and how that data is generated. The witnesses may also testify about other artifacts on the devices that are attributable to a particular user.

The witnesses are familiar with the various applications people commonly use and will testify about which applications were installed on certain devices (such as the Signal application) and when they were installed or uninstalled. The witnesses may further testify about the reasons data sometimes cannot be extracted from devices. The witnesses will testify what is means to "wipe" or "factory reset" a phone, and that data cannot be recovered from a phone that has been factory reset.

The witnesses will testify about how mobile devices transmit and receive communications using cellular or mobile networks and will explain what cellular networks are and how they work. Cellular networks are used transmit data between devices, including to make voice calls and send and receive text and multimedia messages.

The forensic examiners will discuss their knowledge about the internet, including that it is a worldwide network of connected computers used for various purposes including commerce. The witnesses are familiar with how users access the internet, which requires an electronic device capable of accessing the internet. Computers, tablets, cell phones, and other devices can have this capability. The witnesses are familiar that users access browsers or applications to view, send, and receive information over the internet. Some electronic devices, like smartphones and tablets, can be used to conduct "video calls" or to transmit live video over the internet. The witnesses will testify how the users of devices collected in this case used the internet to communicate.

The examiners are familiar with the concept of "UTC" time (Coordinated Universal Time), which is the basis for how time is universally measured. In this case, the timestamp on some of the electronic records is in UTC time, which is seven hours ahead of Arizona's time zone.

**B. Signal**

Special Agent Cullen is also expected to testify about Signal, a messaging application installed on many of the devices in this case. Signal data is end-to-end encrypted, which means only users involved in a communication can see the communication. Special Agent Cullen will testify that Signal is not pre-loaded on devices and must be downloaded by a device user. Signal can be used on internet-capable mobile devices as well as internet-capable computers.

Special Agent Cullen will testify about the capabilities users have within the Signal application. For instance, a user creates a Signal account by providing a phone number which is verified by Signal. A user can identify him or herself to others on Signal using a phone number and/or a username created by the user. A user can change or delete his or

her username.  Special Agent Cullen will testify that Signal transmits text, audio, photos, videos, and other files using an internet connection.  Signal allows users to make voice and video calls using the internet. Signal users can create and name "group chats" to interact with multiple users at once.  Groups are managed by administrators, who can add and remove members from the group; edit group information like the title of the group or whether the messages will disappear after a particular amount of time; and control who can send messages.  Current administrators can make other group members administrators.  Any group member can choose to leave a group, and administrators can delete a group after removing group members.  Users can delete individual messages as well as entire chats.  In some instances, a user can delete messages from all devices that received the messages, not just the user's own device(s).

Specific to the devices in this case, Special Agent Cullen will testify that FBI was able to access and view encrypted Signal messages on some of the devices using an encryption "key."  He may explain some of the Signal data extracted from the devices and contained in government exhibits.  Special Agent Cullen will opine that while FBI can sometimes restore data deleted from electronic devices and electronic storage mediums, FBI was unable to recover any deleted Signal data in this case.

### C. Email and Google Mail Route Tracing

Special Agent Cullen will also testify generally about email and how email is transmitted from the sender to the recipient through a series of servers using the internet.  He will explain what Internet Protocol (IP) addresses are and how information contained in the metadata of an email—including IP addresses—can show the route a particular email traveled from sender to recipient.  He will testify that "Gmail" is an email service provided by Google, an interstate and international electronic communication service provider.  Google provides other services to its users as well, including the ability to make video calls over the internet, including through the Google Duo application (now Google Meet).

Special Agent Cullen will testify that emails sent from the jomiebee@gmail.com account would have been sent through Google servers using the internet and may testify as

to the metadata of certain emails. He will specifically testify about the email "header" information for an email sent on March 24, 2023 from jomiebee@gmail.com to C.B. Using header information associated with the email, he determined the email was sent in Arizona and transmitted through servers outside the state before returning to Arizona.[1] Special Agent Cullen may similarly testify about the transmission routes of other emails from the jomiebee@gmail.com account.

## II. Request for Notice and Discovery from Defendants

The government respectfully requests notice and reciprocal discovery from the defendants regarding any expert witnesses the defense expects to call during the trial, including a summary of anticipated testimony, pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C). Similarly, the government respectfully requests disclosure pursuant to Federal Rules of Criminal Procedure 16(b)(1)(A) and (B). The government requests the opportunity to inspect, copy, and photograph any and all items listed in Rule 16(b)(1) that defendants intend to use in their case-in-chief at trial. To date, the United States has not received any such discovery from any defendant.

///
///
///
///
///
///
///
///
///

---

[1] A Google custodian of records may also testify that Google does not have servers in Arizona.

### III. Witness Signatures

Pursuant to Rule 16(a)(1)(G), the noticed witnesses identified to date have approved and signed this notice and/or any supplemental notices and/or reports in advance of trial.

*/s Anita Shah (with permission)*
Anita Shah
Master Digital Forensic Examiner
Federal Bureau of Investigation

*/s Joseph P. Shramovich III (with permission)*
Joseph P. Shramovich III
Senior Digital Forensic Examiner
Federal Bureau of Investigation

*/s J. Patrick Cullen (with permission)*
J. Patrick Cullen
Special Agent and Digital Forensic Examiner
Federal Bureau of Investigation

*/s Joshua B. Arndt (with permission)*
Joshua B. Arndt
Special Agent and Digital Forensic Examiner
Federal Bureau of Investigation

Respectfully submitted this 12th day of April, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Jillian Besancon*
DIMITRA H. SAMPSON
JILLIAN BESANCON
RYAN POWELL
Assistant U.S. Attorneys

Case 3:22-cr-08092-SMB   Document 483   Filed 04/12/24   Page 8 of 9

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following registrants:

Myles Schneider
*Attorney for Defendant (1) Samuel Rappylee Bateman*

Cindy Castillo
Jose Antonio Saldivar
*Attorneys for Defendant (2) Naomi Bistline*

Sandra Kay Hamilton
*Attorney for Defendant (3) Donnae Barlow*

D Stephen Wallin
*Attorney for Defendant (4) Moretta Rose Johnson*

Mark Jeffrey Andersen
*Advisory Attorney for Pro Se Defendant (5) Josephine Barlow Bistline*

Jacob Faussette
*Advisory Attorney for Pro Se Defendant (6) LaDell Jay Bistline, Jr.*

Gillmore Birch Bernard
*Attorney for Defendant (7)* Brenda Barlow

Jocquese Lamount Blackwell
*Attorney for Defendant (8) Marona Johnson*

Loyd C. Tate
*Attorney for Defendant (9) Leia Bistline*

Kathy L. Henry
*Attorney for Defendant (10) Torrance Bistline*

Carlos Anthony Brown
*Attorney for Defendant (11) Leilani Barlow*

I further certify that participants in this case are not registered CM/ECF users. I have mailed the foregoing document by regular First-Class Mail, postage prepaid, for

- 8 -

delivery, to the following non-CM/ECF participants:

    Josephine Barlow Bistline
    Reg. No. 51598-510
    Florence-AZ-Florence-CAFCC
    Central Arizona Florence Correctional Complex
    P.O. Box 6300
    Florence, AZ 85132
    *Pro Se Defendant (5)*

    LaDell Jay Bistline, Jr.
    Reg. No. 60788-510
    Florence-AZ-Florence-CAFCC
    Central Arizona Florence Correctional Complex
    P.O. Box 6300
    Florence, AZ 85132
    *Pro Se Defendant (6)*